## BROOKS *v.* FLORIDA.

No. 14, Misc.   Decided December 18, 1967.

*Earl Faircloth,* Attorney General of Florida, and *Wallace E. Allbritton,* Assistant Attorney General, for respondent.

PER CURIAM.

Petitioner, Bennie Brooks, was convicted of participating in a riot in the Florida prison where he was an inmate and was sentenced to a term of nine years and eight months to run consecutively with the sentence he was already serving.   His conviction was affirmed without opinion by the Florida District Court of Appeal, First District, and his petition for writ of certiorari filed in the Florida Supreme Court was dismissed, also without opinion.

The disturbance in the prison occurred on May 27, 1965.   The same day Brooks was ordered confined in a punishment cell for 35 days with two other prisoners also accused of the rioting.   Brooks says the cell was 7 feet long and 6½ feet wide; a witness for the State testified it was 6 feet longer.   This minor difference aside, the parties agree that the punishment cell had no external window, that it contained no bed or other furnishings or facilities except a hole flush with the floor which served as a commode, and that during the first 14 days

he lived in this cell Brooks' only contact with the outside was an unspecified number of interviews with the prison's investigating officer. It is also agreed that while so confined Brooks was fed a "restricted diet" consisting, according to the testimony of the investigating officer, of "peas and carrots in a soup form" three times daily. Brooks' more detailed description of this concoction— "they fed us four ounces of soup three times a day and eight ounces of water"—was not controverted, nor was his testimony that he was stripped naked before being thrown into the cell. On the 15th day of confinement under these conditions, Brooks was taken from the punishment cell and again brought directly to the investigating officer. This time, shortly after questioning began, Brooks confessed and dictated his statement into a tape recorder. The recording was introduced at trial. Brooks says that he was brutally beaten by one officer while the other was taking his statement. However, we do not consider this claim because the officer denied it and the judge disbelieved Brooks' testimony. The judge also concluded that the confession was voluntary. We disagree.

Putting to one side quibbles over the dimensions of the windowless sweatbox into which Brooks was thrown naked with two other men, we cannot accept his statement as the voluntary expression of an uncoerced will. For two weeks this man's home was a barren cage fitted only with a hole in one corner into which he and his cell mates could defecate. For two weeks he subsisted on a daily fare of 12 ounces of thin soup and eight ounces of water. For two full weeks he saw not one friendly face from outside the prison, but was completely under the control and domination of his jailers. These stark facts belie any contention that the confession extracted from him within minutes after he was brought from the cell was not tainted by the 14 days he spent in such an

oppressive hole. In a long line of cases beginning with *Brown* v. *Mississippi*, 297 U. S. 278 (1936), and reaffirmed last Term in *Clewis* v. *Texas*, 386 U. S. 707 (1967), we have held that the Constitution does not permit prosecutorial use of an involuntary confession. We have also asserted repeatedly that, in adjudicating the question of voluntariness, "we cannot escape the responsibility of making our own examination of the record." *Spano* v. *New York*, 360 U. S. 315, 316 (1959). See *Haynes* v. *Washington*, 373 U. S. 503, 515 (1963); *Chambers* v. *Florida*, 309 U. S. 227, 228–229 (1940). The record in this case documents a shocking display of barbarism which should not escape the remedial action of this Court. Accordingly, we reverse the judgment below.*

The motion for leave to proceed *in forma pauperis* and the petition for writ of certiorari are granted. The judgment of the Florida District Court of Appeal, First District, must be and hereby is

*Reversed.*

MR. JUSTICE BLACK concurs in the result.

---

*Because we hold that the use at trial of the involuntary confession requires reversal of petitioner's conviction, we find it unnecessary to reach other issues raised by him. Thus, we express no views on petitioner's contentions that (1) he was denied a fair trial because the residents of the rural county where venue was set were hostile toward inmates of the prison and (2) he was denied the effective assistance of counsel because his appointed attorney was forced to trial without an opportunity to prepare to represent petitioner and the 12 codefendants tried with him.