390 So.2d 748 (1980)
The STATE of Florida, Appellant,
v.
Allen BECK, Appellee.
No. 80-420.
District Court of Appeal of Florida, Third District.
October 28, 1980.
Rehearing Denied December 10, 1980.
Janet Reno, State's Atty. and Neil Karadbil, Asst. State's Atty., for appellant.
Bennett H. Brummer, Public Defender and Robert R. Schrank, Asst. Public Defender, for appellee.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
*749 SCHWARTZ, Judge.
The state appeals from an order suppressing the defendant's four confessions to the crime of arson. It was undisputed that Beck had been given his Miranda warnings on several occasions before he confessed and that he had not been abused or overborne in any way. The basis of the ruling below, however, was that the confessions were the product of "implied promises" of psychiatric help and assistance. We reverse.
Since Beck prevailed, the record must be viewed in the light most favorable to him.[1] Even doing so, we find nothing to support the order under review. The trial judge-and the defendant on appeal-have relied on two statements made to Beck during the course of his multiple confessions. The first was by a polygraph examiner, George Slattery, before Beck made his initial admission. Beck asked Slattery, in an apparently hypothetical fashion, "what would happen to someone if they had set the fires... if they were sick?" According to the defendant, Slattery answered as follows:
A: He said, `I'm not right in a position I'm not a law officer,' he said, `but if there's something wrong with you,' he said, `surely, the Court will look upon this and may give you some help.'
Q: How did you feel when Mr. Slattery told you that?
A: I believed what he said.
Q: What do you mean when you say, `you believed what he said,' that he could get you help or that it would be taken into consideration?
A: He said they would get me some help. [emphasis supplied]
The other alleged promise was by an investigating officer, Sgt. Wagner, between the third and fourth confessions.[2] On that occasion, he told Beck that "I would ask for [a psychiatric evaluation] if that's what he wanted and he said he did."
We hold that neither Slattery's nor Wagner's assurances to Beck constitute a basis for vitiating the confessions. This is the case because, even if the remarks may be considered as containing "promises" to the defendant, neither was made as a means of inducing or in return for the confessions which followed. In other words, Slattery and Wagner pointedly did not say that, if Beck confessed, they would get him help or a psychiatric evaluation; they said that they would do so if "someone" were sick, in the first instance, or if Beck desired it, in the second. It is established law that a
confession should be excluded if the attending circumstances, or the declarations of those present at the making of the confession, are calculated to delude the prisoner as to his true position, or to exert improper and undue influence over his mind. [emphasis supplied]
Frazier v. State, 107 So.2d 16, 21 (Fla. 1958). See also, Blatch v. State, 389 So.2d 669 (Fla. 3d DCA 1980). There is nothing in either remark made to Beck which qualifies under this rule. To the contrary, it is well-settled that non-particularized comments such as these concerning medical or psychiatric assistance which may be provided to the defendant do not result in the exclusion of a confession, so long as the aid is not offered in return for a consequent statement. DeCastro v. State, 359 So.2d 551, 552 (Fla. 3d DCA 1978) ("appellant was not promised anything in return for his statement in this case ... the promise of methadone treatment was not used as an inducement for him to confess." [emphasis supplied]); Wade v. State, 204 So.2d 235 (Fla. 2d DCA 1967); see, State v. Jones, 26 Ariz. App. 66, 546 P.2d 43 (1976); State v. Creekmore, 208 Kan. 933, 495 P.2d 96 (1972); People v. White, 63 A.D.2d 752, 404 N.Y.S.2d 894 (1978); cf. Presnell v. State, 241 Ga. 49, 243 S.E.2d 496 (1978), rev'd on other grounds, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); State v. Miller, 76 N.J. 392, 388 A.2d 218 *750 (1978); Townes v. Commonwealth, 214 Va. 683, 204 S.E.2d 269 (1974); contra, Tatum v. State, 585 S.W.2d 957 (Ark. 1979). The recent case of Slaten v. State, 367 So.2d 562 (Ala.Cr.App. 1978), writ denied, 367 So.2d 569 (Ala. 1979), is precisely on point. At 367 So.2d 565-66, the court held:
[T]he only thing said by [the officer] that could be construed as an offer or promise to help pertained to his statement to the effect that he would ask or tell Mr. Bill Thornton of the Mental Health Department to confer with defendant. We are convinced that his statement to defendant did not constitute any offer or promise conditioned upon the incriminating statement or confession. We have no reason to discount the following in his testimony:
`Q: You used the words I'll help you, didn't you, when you were talking to him, I'll help you out?
A: No, sir, I told him that if he did do this something was wrong with him. I would get him some help.
Q: All right. Now, the help that you were talking about, you don't know what he understood, do you?
A: I told him I would tell Bill Thornton of the Mental Health Department, I told him I would get him over there.
Q: You also told him you would help him, is that correct, Larry?
A: Yes, sir, that is correct.
Q: And then you talked about the Mental Health Clinic, is that correct?
A: No, sir, we were talking about the Mental Health Clinic when we were talking about helping him.
Q: Did you ever say these words, I will help you, if you will tell me what happened?

A: No, sir.' [emphasis supplied]
This case is thus in sharp and decisive contrast with those cited by the defendant, e.g., Lawton v. State, 152 Fla. 821, 13 So.2d 211 (1943); Fillinger v. State, 349 So.2d 714 (Fla. 2d DCA 1977), cert. denied, 374 So.2d 101 (Fla. 1979), in all of which the interrogator promised the defendant some benefit as a quid pro quo for the confession.
It is true that, although his written confessions recited that no promises had been made, Beck did state that the reason he confessed was that he thought, from "the way they were talking, that I would get the help I need." Since, however, this motivation was not, as we have seen, induced by any improper threat or promise by anyone else, it cannot result in the suppression of the confessions.[3] See, Barnason v. State, 371 So.2d 680 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 764 (Fla. 1980). Instead, Beck's statements must be regarded as stemming solely from his own self-induced desire to alleviate his mental illness and distress, and therefore as entirely voluntary and admissible. See, State v. Williams, 386 So.2d 27 (Fla. 2d DCA 1980); State v. Baker, 4 Kan. App. 2d 340, 606 P.2d 120 (1980).
Reversed.
NOTES
[1] Royer v. State, 389 So.2d 1007 (Fla. 3d DCA 1980).
[2] Even if we found, as we do not, that the officer's statement was an improper promise, the result would be to invalidate only the fourth confession which followed it. It obviously could have no effect on the preceding statements. State v. Knight, 324 So.2d 169 (Fla. 2d DCA 1975).
[3] The situation involved in this case is essentially the same as one in which an officer, simply in the course of speaking to him, promises or gives the defendant a cigarette or a cup of coffee; surely, his subsequent contention that he confessed only in order to receive such a benefit-unjustified by the statements of the police-would not invalidate the confession. The result would be different, however, if the questioner told the defendant that he would be given an amenity only in return for a statement.