HARRIS, Chief Judge.
Brian P. Kennedy timely appeals the trial court’s order adjudicating him guilty of first degree felony murder, robbery, and grand theft of a motor vehicle. He also appeals the trial court’s order denying his motion to sup *136 press confessions, admissions and statements. We affirm.
Kennedy’s convictions stem from an incident in which Stephen Dumont, the manager of an Exxon station along 1-95 in Titusville, was robbed and killed with a shotgun. Before Dumont died, he told police that the crime had been committed by two black males and a white male in a silver car. Kennedy, a white youth, was found sleeping in a stolen silver car parked “in the black area of Mims.”
Kennedy was taken to an interrogation room, read his Miranda rights, and initialed each of the warnings on the written Miranda form. At some point during the interrogation, Kennedy asked what would happen to him if he told the detective his story. The detective asked Kennedy if he had ever heard of immunity and then proceeded to explain immunity to him. The detective, immediately realizing that he had made a mistake by mentioning immunity, informed Kennedy that he, as a police officer, could not grant immunity, but that the state attorney could. However, when the detective offered to get a state attorney, Kennedy said “[n]ever mind, I’m going to tell you what happened. I don’t want an attorney.” Kennedy then confessed to his involvement in the robbery of the Exxon station.
Kennedy moved to suppress his confession and admissions on the basis, among other reasons, that they were obtained because of the promise of immunity.
The trial court denied the motion to suppress, but entered an order containing the following provisions:
The Defendant was sold a “bill of goods” by the interrogating officer with references to vague promises of immunity, statements not to be used against him in court and threats that the Black Defendants were going to gang up and blame everything on him.
The Court finds that despite the fact that the Defendant ... was sold a “bill of goods” by the interrogating officer, there was no sufficient coercion which would have overcome his free will. The statements made by Defendant ... were free and voluntary with full knowledge of the meaning and effect and designed by him to gain favorable consideration in the charging of the crimes or the prosecution thereof.
The only issue that we find merits discussion is Kennedy’s contention that the court, by finding that he was “sold a bill of goods” on the promise of immunity, should have suppressed the confession and admissions.
We acknowledge an apparent inconsistency within the court’s ruling on the motion to suppress. However, it is the entire ruling that must be read in order to determine what the court meant by its inartful and confusing finding that Kennedy was sold a “bill of goods” by the officer making “references to vague promises of immunity, statements not to be used against him in court ...” A complete reading of the court’s ruling convinces us that there was no finding that a promise of immunity was even vaguely made.
Had the trial court, based on its “bill of goods” finding, suppressed the confession, this matter could be resolved by simply relying on the presumption of correctness of the trial court’s ruling. But that is not the case here. The trial court ruled, in spite of such “finding,”[1] that Kennedy’s confession was “free and voluntary with full knowledge of the meaning and effect and designed by him to gain favorable consideration in the charging of the crimes or the prosecution thereof.” This was the trial court’s interpretation of the effect of all the evidence.
The supreme court in Owen v. State, 560 So.2d 207, 211 (Fla.1990), stated our obligation in this matter as follows:
The ruling[2] of the trial court on a motion to suppress comes to us clothed with a presumption of correctness and we must interpret the evidence and reasonable in *137 ference and deductions in a manner most favorable to sustaining the trial court’s ruling. (Emphasis added).
The court’s finding that Kennedy was “sold a bill of goods” is confusing but is not necessarily inconsistent with the court’s acceptance of the officer’s testimony that, although he mentioned the word “immunity” and tried to define it, he immediately advised Kennedy that he, as a police officer, was not authorized to grant immunity but that he would get a lawyer from the state attorney’s office if Kennedy desired. The officer testified that Kennedy declined the offer. Even Kennedy did not testify that the officer said “you -will get immunity if you confess.” To the contrary, he testified, not that he had been given immunity, but that he believed that the officer “could get me immunity.” The “bill of goods” finding indicates that the court believed that Kennedy thought that even if the officer lacked authority to grant immunity, he would speak to the state attorney’s office on Kennedy’s behalf. In fact, the officer did tell Kennedy that he would inform the prosecutors of Kennedy’s cooperation— and he did. The court did not find a quid pro quo agreement.[3]
In order to determine whether the court erred in its resolution of the motion to suppress, we are compelled to view the “totality of the circumstances”[4] in “a manner most favorable to sustaining the trial court’s ruling.” And by that standard, although it would have been better had the officer not mentioned the term “immunity,” the trial court could properly find that the reference to immunity in the context of this case did not constitute “coercion” nor did it “delude the prisoner as to his true position” or “exert an improper and undue influence over his mind.” Because the record justifies this con-elusion, the trial court is affirmed,
AFFIRMED.
GOSHORN, J., concurs.
THOMPSON, J., dissents with opinion.

. What precisely is this finding? The court certainly made no finding that these "vague” promises constituted "an express quid pro quo bargain for confession.” State v. Moore, 530 So.2d 349 (Fla. 2d DCA 1988).

. Notice that it is the ultimate ruling, not any specific finding of fact within that ruling, that is entitled to the presumption of correctness.

. Note that the actual wording by the court was "references to vague promises of immunity." This is not a “finding” that promises of immunity were actually made, even vaguely.

. Moore suggests that "totality of the circumstances” includes such factors as youth, lack of education, low intelligence, explanation of constitutional rights and length of interrogation. In our case, although Kennedy was only sixteen years old at the time of the offense (and confession), he had already completed the tenth grade, and a reading of the interview convinces that he was neither of low intelligence nor confused. The interview lasted only about twenty minutes, and Kennedy acknowledges that the Miranda warnings were given. Further, his experience in the criminal justice system debunks any notion of naivete.